UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN M. FLOYD AND ASSOCIATES,
INC., a Texas corporation,

                          Plaintiff,

v.

TAPCO CREDIT UNION,

                          Defendant.

CASE NO. C10-5946BHS

ORDER GRANTING TAPCO
CREDIT UNION'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on TAPCO Credit Union's ("TAPCO")
Motion for Summary Judgment (Dkt. 19). The Court has considered the pleadings filed in
support of, and in opposition to, the motion and the remainder of the file.  For the reasons
stated herein, the Court grants the motion.

## I. PROCEDURAL HISTORY

On December 29, 2010, Plaintiff John M. Floyd and Associates ("Floyd") filed its
complaint against TAPCO.  Dkt. 1. On March 24, 2011, TAPCO moved to stay
proceedings.  Dkt. 6.  On May 6, 2011, the Court denied TAPCO's motion.  Dkt. 11.  On
May 17, 2011, TAPCO answered the complaint. Dkt. 12.

1    On June 28, 2011, the Court issued a minute order setting trial and pretrial dates.

2    Dkt. 16.  On September 19, 2011, Floyd moved to extend the deadline to complete

3    discovery.  Dkt. 17.  On October 17, 2011, the Court granted that motion, thereby

4    extending the discovery cut-off date to November 16, 2011.  Dkt. 18.

5        On November 16, 2011, TAPCO filed the instant motion for summary judgment.

6    Dkt. 19. On December 5, 2011, Floyd responded.  Dkt. 25.  On December 8, 2011,

7    TAPCO renoted its summary judgment motion to December 23, 2011.  Dkt. 26.  On

8    December 19, 2011, Floyd filed a (second) revised response to TAPCO's summary

9    judgment motion.  Dkt. 27.  On December 21, 2011, TAPCO replied.  Dkt. 28.  On

10   December 23, 2011, Floyd surreplied.  Dkt. 33.

11                          **II. FACTUAL BACKGROUND**

12       Floyd is a Texas-based consulting firm that specializes in overdraft protection

13   software and software training.  Dkt. 19 at 2; Dkt. 25 at 3.  Floyd designs, installs, and

14   implements overdraft privilege programs that allow financial institutions to generate

15   additional non-interest income or revenue, for which Floyd is paid a commission.  *Id*. at

16   3.  On or about May 5, 2004, Floyd entered into a contract with TAPCO in part to install

17   into TAPCO's computer system its Overdraft Privilege Program Software program

18   ("ODP"), which allowed TAPCO's customers, for a fee, to obtain funds in excess of their

19   account balances, on a short-term basis.  *Id*. at 3; Dkt. 19 at 2.  This matter involves

20   allegations that TAPCO failed to pay Floyd amounts due and owing under that contract

21   ("Contract").

22

**A.     The Contract**

Consisting of seven pages, the Contract was drafted as a letter from John M. Floyd, the Regional Director of Floyd, to John Bechtholt, the CEO of TAPCO. Dkt. 20-1 at 2-9.  Floyd concedes that it prepared the Contract, but claims that both parties negotiated certain terms therein.  Dkt. 25 at 3.

On page 2 of the Contract, under the section titled "Conduct of the Engagement," the parties agreed that the "initial engagement" would take six to eight calendar weeks to complete, "with follow-up lasting for the contractual engagement period."  Dkt. 20-1 at 3. The Contract does not define "initial engagement" or otherwise explain what obligations TAPCO agreed to complete during the initial engagement. *See* Dkt. 20-1.

The Contract contemplated a three-year engagement period comprising 36 billing months. *Id*. at 4.  For the engagement, TAPCO agreed to pay Floyd twelve percent of its increased monthly non-interest income or revenue resulting from its use of Floyd's recommendations, products, and/or services for overdraft privilege programs. *Id*.  To calculate the income for TAPCO's use of the ODP, the Contract provided that "[i]f a recommendation [made by Floyd] is not approved [by TAPCO] it will not be included in the fee calculation.   However, if any recommendation, within 24 months of the initial engagement, is installed or approved or approved as modified . . .  it will be included in the fee calculation." *Id*.  In the event that TAPCO approved any recommendations Floyd made concerning TAPCO's use of products or systems *other* than the ODP, the Contract required TAPCO to pay for such products or systems if the recommendation was approved within 24 months of the initial engagement. *Id*.

**B.      The Engagement**

Floyd installed the ODP and provided training and consulting services to TAPCO. Dkt. 19 at 3; Dkt. 27 at 4.  Floyd claims that it provided "recommendations, products and/or services for the implementation of overdraft privilege programs for traditional checking accounts . . . [and] electronic transactions for TAPCO customers, including debit cards, ATMs and Point of Sale transactions." *Id*.  Floyd contends that the most valuable aspect of its overdraft privilege programs is its recommendations regarding how a financial institution should implement an overdraft program in accordance with regulatory standards and best industry practices. *Id*.

On October 23, 2007, TAPCO notified Floyd that it did not intend to renew the Contract once it terminated on December 31, 2007.  Dkt. 19 at 6.  Records indicate that Floyd was well aware of this purported termination date and of TAPCO's intent to only pay Floyd commissions up until that date. *Id.*  TAPCO claims that, other than the ODP, it did not approve or implement any recommendation made by Floyd prior to December 31, 2007. *Id*. at 4.  Likewise, TAPCO claims that it did not approve or implement any recommendation made by Floyd within 24 months of the parties' initial engagement, as it claims the Contract required for commissions to be due. *Id*. at 5.

Floyd tells a different story.  Floyd argues that the only reason TAPCO did not implement many of Floyd's recommendations, products and/or services was because its computer core processing was out of date.  Dkt. 27 at 5.  Once TAPCO updated its core processors in 2007, Floyd argues that TAPCO used the recommendations post-December 2007 to generate more than $1,000,000 in additional non-interest income, for which

1    TAPCO has not paid commission.  *Id*.  Floyd bases this figure on TAPCO's state and

2    federal filings, which it claims show TAPCO's increased non-interest income from

3    December 31, 2007 to present.  Id. at 6-7.  Floyd contends that TAPCO terminated the

4    Contract and thereafter implemented its overdraft privilege program for electronic

5    transactions in an effort to avoid paying Floyd its twelve percent commission.  *Id*. at 6.

6    Moreover, Floyd claims that TAPCO refused to return any of Floyd's products or

7    services after it purportedly terminated the Contract.  *Id*.

8    **C.      Payment and Accounting**

9           TAPCO paid Floyd $147,583.05 for the engagement through December 31, 2007.

10   Dkt. 19 at 5.  TAPCO claims that this amount represents the full payment due for benefits

11   acquired from the ODP software, in accordance with the Contract.  Dkt. 19 at 14.  Floyd

12   does not dispute that it received this payment or that the amount constitutes full payment

13   for its recommendations, services, and/or products pre-December 31, 2007.  Instead,

14   Floyd claims that it is due amounts in connection with TAPCO's purported increased

15   non-interest income or revenue from December 31, 2007 to present, which it believes to

16   be in excess of $1 million.  Dkt. 27 at 6-7.  With respect to this increase in income or

17   revenue, Floyd claims that it is entitled to TAPCO's financial information, which it

18   claims TAPCO has not provided.  Dkt. 1 at 6.

19                                **III. DISCUSSION**

20   **A.      Summary Judgment Standard**

21          Summary judgment is proper only if the pleadings, the discovery and disclosure

22   materials on file, and any affidavits show that there is no genuine issue as to any material

1  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

2  The moving party is entitled to judgment as a matter of law when the nonmoving party

3  fails to make a sufficient showing on an essential element of a claim in the case on which

4  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

5  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

6  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

7  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

8  present specific, significant probative evidence, not simply "some metaphysical doubt").

9  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

10  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

11  jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

12  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

13  626, 630 (9th Cir. 1987).

14       The determination of the existence of a material fact is often a close question. The

15  Court must consider the substantive evidentiary burden that the nonmoving party must

16  meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

17  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

18  issues of controversy in favor of the nonmoving party only when the facts specifically

19  attested by that party contradict facts specifically attested by the moving party.  The

20  nonmoving party may not merely state that it will discredit the moving party's evidence

21  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

22  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

1  nonspecific statements in affidavits are not sufficient, and missing facts will not be

2  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

3  **B.    Motions to Strike**

4          In its reply, TAPCO moved to strike portions of the declarations of John M. Floyd

5  and Eric Hudgins, submitted in support of Floyd's response.  Dkt. 28.   Although the

6  Court will not strike entirely the declarations from the record, the Court acknowledges

7  that the Floyd and Hudgins declarations warrant scrutiny for containing statements that

8  arguably lack foundation.  The Court will weigh these declarations accordingly.

9          In its surreply, Floyd also moved to strike TAPCO's entire reply and supporting

10 declarations, claiming that TAPCO improperly raised for the first time certain arguments

11 and evidence on reply.  Dkt. 33.  In so doing, Floyd does not specify – and the Court will

12 not speculate as to – the evidence and arguments that concern Floyd.  Regardless, finding

13 nothing improper about TAPCO's reply, the Court denies Floyd's motion to strike.

14 **C.    The Complaint and Issue**

15         Floyd has asserted four claims: (1) breach of contract; (2) unjust enrichment;

16 (3) accounting; and (4) breach of the implied duty of good faith and fair dealing.  Dkt. 1.

17 All four claims flow from Floyd's principal allegation that TAPCO has failed to pay

18 Floyd for its use of Floyd's recommendations, products, and/or services from late 2007 to

19 present.  *See id*.

20 **D.    Breach of Contract**

21         TAPCO makes three arguments with respect to Floyd's breach of contract claim.

22 TAPCO first argues that the Contract is completely integrated and that Floyd cannot

1 introduce evidence that the contractual term lasted past December 31, 2007, which is

2 when TAPCO claims the Contract terminated.  Dkt. 19 at 10.  TAPCO next argues that

3 even if the Contract is partially integrated, Floyd may not introduce extrinsic evidence

4 concerning open terms that are inconsistent with the written terms.  Dkt. 19 at 11.  On

5 that theory, TAPCO asserts that the Contract does not require any payment to Floyd for

6 recommendations that Floyd made after 24 months of the initial engagement.  *Id.*

7 Finally, TAPCO argues that "[Floyd] cannot properly introduce significant and probative

8 evidence to the effect that TAPCO is liable to [Floyd] for any ODP charges incurred after

9 the Contract terminated on December 31, 2007."  Dkt. 19 at 12.

10         Finding that the Contract is ambiguous with respect to several terms crucial to the

11 resolution of the allegations contained in the complaint, the Court rejects TAPCO's first

12 two arguments.  But, with respect to TAPCO's third argument, the Court agrees that,

13 even if the Contract permitted a recovery of commissions, Floyd has not provided any

14 probative evidence to support its underlying claim that TAPCO used its

15 recommendations, products, and/or services post-December 31, 2007.  Absent this

16 evidence, the Court finds that trial is not necessary.

17         Indeed, in its May 5, 2011 answer to the complaint, TAPCO denied that it

18 generated any income or earnings from its continued use of Floyd's recommendations,

19 products and/or services after the parties' contract terminated on December 31, 2007.

20 Dkt. 12 at 3.  Discovery closed on November 16, 2011, and it would appear that Floyd

21 would have generated by now some evidentiary support for its claim.  To be sure, it

22 appears that TAPCO afforded Floyd ample opportunity to produce that evidence,

ORDER - 8

1   including an invitation to review its computer records for information relating to

2   TAPCO's purported use and reliance upon Floyd's proprietary recommendations post-

3   December 31, 2007.  Rather than accept that invitation or otherwise assemble specific

4   probative evidence, Floyd continues to rely in its response on an unsubstantiated

5   allegation regarding its "belie[f] that TAPCO has generated in excess of $1,000,000 in

6   additional non-interest income" post-December 31, 2007.  Dkt. 27 at 12.  A "belief" that

7   TAPCO increased its earnings – and that those earnings resulted from TAPCO's

8   improper use of Floyd's recommendations – is not evidence.   Instead, Floyd must

9   provide "significant and probative" facts to defeat TAPCO's motion, which it has failed

10   to do.  *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.

11   1991).  For these reasons, the Court grants TAPCO's motion with respect to Floyd's

12   contract claim and hereby dismisses that claim.[1]

13   **E.      Quantum Meruit**

14   TAPCO next argues that Floyd's quantum meruit claim fails in part because

15   TAPCO has not derived any benefit from Floyd.  Dkt. 19 at 13.  For the same reasons

16   stated above, the Court grants TAPCO's motion with respect to Floyd's quantum meruit

17   claim.  Reading the complaint as a whole, the gist of Floyd's quantum meruit claim is

18   ─────────────────────

19   [1] In its complaint, Floyd also alleges that TAPCO has breached the Contract by failing to
provide its financial information to Floyd, from which Floyd contends it can ascertain TAPCO's

20   use of Floyd's recommendations and calculate the commissions owed. Dkt. 1 at 5. But Floyd
does not reference any contractual provision that requires TAPCO to disclose its financial
information.  Moreover, there is no evidence that Floyd requested such information from

21   TAPCO, nor is there evidence that TAPCO has declined to turn over such information when
asked.  As a result, the Court denies any breach of contract claim that flows from allegations

22   concerning TAPCO's purported failure to disclose financial information.

1  that TAPCO unjustly profited from its use of Floyd's recommendations, products, and/or

2  services from December 31, 2007 to present.  Dkt. 1 at 7.  As noted, the Court finds that

3  Floyd has failed to provide any probative evidence that TAPCO did in fact use and

4  benefit from Floyd's recommendations post-December 31, 2007.  TAPCO paid Floyd

5  $147,583.05 for TAPCO's use of the ODP pre-December 31, 2007, and, based on the

6  record, the Court cannot find that this payment constituted anything less than the full

7  payment due and owing to Floyd.  Accordingly, the Court dismisses Floyd's quantum

8  meruit claim.

9  **F.    Accounting**

10        TAPCO also argues that Floyd has failed to establish a cause of action for

11  accounting because the parties had no fiduciary relationship and Floyd never demanded

12  accounting from TAPCO prior to commencing the lawsuit.  *See State v. Taylor*, 58

13  Wn.2d 252, 262 (1961) (citations omitted).  In its response, Floyd failed to address

14  TAPCO's arguments with respect to the accounting claim.  Even so, the Court finds that

15  Floyd cannot establish as a matter of law a claim for accounting.  TAPCO had no

16  fiduciary, contractual, or other obligation to unilaterally turn over financial information to

17  Floyd, and there is no evidence that Floyd requested, and TAPCO denied, that

18  information.  Accordingly, the Court dismisses Floyd's accounting claim.

19  **G.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

20        Finally, TAPCO seeks to dismiss Floyd's claim for breach of the implied covenant

21  of good faith and fair dealing.  Implied in every contract, the duty of good faith and fair

22  dealing requires parties to cooperate with each other so that each may obtain the full

1    benefit of performance.  *See* 23 WILLISTON ON CONTRACTS § 63:22 (4th ed. May 2011).

2    However, the duty does not require a party to accept an obligation that would be

3    inconsistent with other terms of the parties' contractual relationship.  *Id.*  Here,

4    notwithstanding the nuances of the Contract, the Court finds that Floyd has failed to

5    produce any evidence that TAPCO's performance was inconsistent with what the

6    Contract required.  Floyd does not dispute that it received full payment for TAPCO's use

7    of ODP-related recommendations pre-December 31, 2007, and, as explained above,

8    nothing in the record indicates that TAPCO used Floyd's recommendations post-

9    December 31, 2007.  For these reasons, the Court dismisses Floyd's claim for breach of

10   the implied covenant of good faith and fair dealing.

11                                    **IV. ORDER**

12        Therefore, it is hereby **ORDERED** that TAPCO Credit Union's Motion for

13   Summary Judgment (Dkt. 19) is **GRANTED**.  As a result, all claims in the Complaint are

14   hereby **DISMISSED**.

15        Dated this 8th day of February, 2012

16

17

18                                    _____
                                     BENJAMIN H. SETTLE
                                     United States District Judge

19

20

21

22

ORDER - 11